FOURNET, Chief Justice.
We granted a writ of certiorari[1] in this case on the application of the plaintiff, Jahncke Service Inc. (hereinafter referred to as Jahncke), in order that we might review the judgment of the Court of Appeal for the Fourth Circuit,[2] reversing the judgment of the district court in its favor *506 and against the defendants in solido in the sum of $17,992.44[3] for building material and supplies furnished to Arthur Donnelly in order for him to perform his obligation as sub-contractor under a contract with his co-defendant, Fertel Corporation (hereinafter referred to as Fertel), prime contractor with the Corps of Engineers for restoration and concrete slope pavement for the Anderson-Sunrise Levee and Frederick-Borges Levee, both in Plaquemines Parish, and affirming the judgment of the trial judge insofar as it dismissed Fertel’s re-conventional demand for $51,463.35 [4]
The record shows that by letter of January 15, 1965 [5] Fertel notfied Donnelly that upon execution of its contract with the Corps of Engineers it intended to issue a purchase order to him for approximately 5,500 cubic yards of job delivered ready-mix concrete. Accordingly, purchase orders were made on January 29, 1965 and March 10, 1965 for delivery on specified dates which were extended from time to time for 6,500 cubic yards and 2,000 cubic yards at $16.50 per cubic yard respectively, both providing that Donnelly would secure a guarantee from Jahncke that in the event he failed to provide said materials that Jahncke would fulfill the same under the same terms and conditions. Donnelly secured such a letter On May 25, 1965 and it was delivered to Fertel.
In the meantime, in order to satisfy payment to Jahncke for material it would furnish Donnelly, since it was unwilling to extend him credit and Fertel being desirous to complete its job expeditiously at a favorable price, after discussion of the matter an agreement was entered into which was reduced to writing in the form of a letter dated July 2, 1965 addressed to Jahncke Service Inc., attention Mr. Short, Credit Manager, by Fertel through its Vice-President, Harvey T. Zammit, reading as follows:
“This is to confirm our discussions with you concerning payment for material supplied by you to Mr. Arthur Donnelly to be used on our work on the *508 Lower Sulphur, Empire and Buras ■ levees. We shall make out a separate check in the amount necessary to cover cost of aggregates and cement furnished by you, have this check endorsed by Mr. Donnelly and give or send same to you or your representatives as invoices become due. Mr. Donnelly has agreed to comply with this procedure.” (Emphasis added.)
■ Counsel for Fertel contends here, as he did in the courts below, in which he was sustained by the court of appeal, that the document dated July 2, 1965 is not a contract making Fertel either primarily or secondarily liable for the indebtedness of Donnelly, stating that the most that can be said for this document is that it is a statement of intent’ by Fertel that it would follow a certain procedure in issuing checks to pay Donnelly for the concrete he furnished and that the letter is not of itself an enforceable guarantee. Hence, the parol evidence which was introduced by plaintiff over defendant’s objection should not be considered for the clear provisions of Article 2278 of the Civil Code provide that “parol evidence’ shall not be received * * * to prove any [acknowledgment or] promise to pay the debt of a third person.”
The letter clearly sets forth that there was a discussion between the credit manager of the plaintiff corporation and defendant’s vice president concerning payment of material supplied by Jahncke to Donnelly to be used by Fertel under its contract with the Corps of Engineers for work on the lower Sulphur, Empire and Buras levees wherein Fertel obligated itself to make out separate checks in the amount necessary to cover the cost of aggregated and cement furnished by Jahncke, have the checks endorsed by Donnelly and then give or send same to Jahncke or its representative as invoices became due. The letter further stipulates that Mr. Donnelly agreed to comply with this procedure. Thus, it may be seen in clear and unambiguous language the procedure to be followed for payment of the material was specific.
That this was the understanding between Jahncke and Fertel is unmistakably supported by the evidence in the record, both documentary and parol. By letter dated October 21, 1965[6] Jahncke wrote to Fertel *510 referring it to its own letter of July 2, 1965 and calling its attention to the fact that it had furnished materials through September 30, 1965 to Donnelly in the amount of $21,324.45 of which $18,462.73 was past due and requested the sum be paid in accordance with its obligation under the above mentioned letter. In strict ■pursuance to this request Fertel issued its check dated November 23, 1965 payable to Donnelly and Jahncke for $22,001.17 in payment of the amount claimed plus other items furnished for which payment had in the meantime become due. Again on January 21, 1966 Fertel issued a check payable to Donnelly and Jahncke in the amount of $2,483.68. Both of these checks were properly endorsed by Donnelly and subsequently delivered to and deposited by Jahncke into its account. Thereafter, the record reflects, although Fertel was meeting all of the obligations of Donnelly in connection with the work he was performing under his contract with Fertel, after repeated failure to meet the numerous demands by Jahncke, a letter[7] was addressed to Fertel -and its President calling its attention to the delivery of cement and aggregates for which it had not been paid in the amount of $20,485.13[8] and again enclosing a copy of its letter of July 2, 1965, stating that in view of the fact that Fertel had not lived up to its agreement payment of the amount due was demanded within ten days or it would refer the account to counsel to take the necessary steps to protect its interest.
Counsel further contends that should we reach the conclusion that Fertel is primarily liable for its failure to meet its obligation under its letter of July 2, 1965 to Jahncke, then he urges that it is ambiguous and, as such, the construction given it by Fertel should be considered. The conclusion we have reached hereinabove clearly shows that it is without merit. The letter was simply a confirmation of an agreement that had been entered into between Jahncke and Fertel for the method to be followed in paying for the material *512 Jahncke would supply Donnelly to be used by Fertel in its project under contract with the Federal Government. This was never denied but, in fact, acquiesced to by all parties by Jahncke in furnishing the material after receipt of the letter of July 2nd, 1965; by Fertel when called upon to pay in accordance with the obligation assumed under this agreement by issuing checks accordingly and securing endorsement by Donnelly which were delivered by Fertel to Jahncke as stipulated. The fact that plaintiff in its petition labeled the letter as a guarantee does not change the substance of the allegations of its petition stating that the material furnished by Jahncke to Donnelly was done solely upon inducement of Fertel’s letter which was attached to and made a part of the petition.
For the reasons assigned the judgment of the court of appeal is annulled and set aside and the judgment of the district court affirmed.
BARHAM, J., dissents with written reasons.
McCALEB, J., recuses himself as he has been informed, since the submission of this case, that his son was trial counsel for plaintiff in the district court.

. 254 La. 280, 223 So.2d 408.

. 220 So.2d 555.

. There was an additional judgment in the district court in favor of plaintiff for $2,492.69 against Donnelly, who took no appeal.

. That part of the judgment dismissing the reconventional demand is final as Fertel did not seek a review thereof by applying for certiorari.

. “Dear Mr. Donnelly :
“Upon the execution of a contract between the Corps of Engineers and Fertel, Inc. for the Anderson-Sunrise Levee and Frederick-Borges Levee, Restoration and Concrete Slope Pavement, Plaquemines Parish, Louisiana, it is our intention to issue a purchase order to Mr. Arthur Donnelly, or the company which he represents, for the furnishing of approximately 5500 cu. yards of job delivered ready-mix concrete at the unit price of $16.00 per cu. yd. provided same can be furnished in accordance with specification and job schedule requirements. Issuance of purchase order will be subject to our determination that satisfactory arrangements for meeting all requirements have been made.”

. “Gentlemen:
“For your ready reference enclosed herewith is a copy of your letter to us dated July 2, 1965 which sets forth procedure to be followed in paying out invoices against M. A. Donnelly, for sand and gravel requirements to your contracts on the lower Sulphur, Empire and Buras levees.
, “Also enclosed is itemized statement in the amount of $21,324.45 covering material we have furnished through September 30, 1965. Your attention is called to the past due protion totaling $18,-462.73.
“We wish to request that all payment be made in accordance with the above mentioned letter and your co-operation would be greatly appreciated.

. “Dear Mr. Forebee :
“We are enclosing herewith a delinquent statement of M. A. Donnelly in the amount of $20,485.13. Enclosed also is a copy of letter received from Fertel Inc. dated July 2, 1965 wherein Fertel Inc. agreed to protect Jahncke Service, Incorporated to cover the cost of aggregates and cement as furnished on your work on the Lower Sulphur, Empire and Buras levees.
“We have discussed this matter with Mr. H. R. Zammit and Mr. Donnelly, on .numerous occasions, in view of the fact that Fertel Inc. did not live up to their agreement, and demand is being made on Fertel Ine. for prompt payment of tbe amount due by M. A. Donnelly; namely, $20,485.13.
“We shall appreciate hearing from you within ten (10) days otherwise this account will be referred to counsel with advice to take the necessary steps to protect our interest. Trusting that this will not be necessary, we are
Very truly yours,
H. S. G. Verl'ander
Treasurer”

. By stipulation at the time of the trial the demand was reduced to $17,992.44;